**In re COLOR TILE, INC., Color Tile Holdings, Inc., Color Tile Franchising, Inc., Color Tile Manufacturing, Inc., and C. Tile Transportation, Inc., Debtors.**

**The Unsecured Creditors' Committee On Behalf Of The Debtors' Estates, Plaintiff,**

**v.**

**CBA Industries, Inc., et al., Defendants.**

**Bankruptcy Nos. 96–76 to 96–80. Adversary No. A98–103.**

United States Bankruptcy Court, D. Delaware.

Oct. 13, 1999.

---

10. The creditor provisions of § 1327(a) mirror those of § 1227(a).

Thomas L. Ambro, David W. Carickhoff, Jennifer Bebka, Richards, Layton, & Finger, Wilmington, DE, and Douglas M. Chalmers, Bell, Boyd & Lloyd, Chicago, IL, Counsel for Plaintiff.

Robert B. Anderson, McCarter & English, LLP, Wilmington, DE, David Golub, Williams, Caliri, Miller & Otley, Wayne, NJ, Counsel for CBA Industries, Inc.

## MEMORANDUM OPINION AND ORDER [1]

JUDITH K. FITZGERALD, Bankruptcy Judge.

Pending before the Court are cross motions for summary judgment filed on behalf of plaintiff and defendant CBA Industries, Inc. For the reasons which follow, the court will grant the motion for summary judgment on behalf of CBA Industries, Inc., and deny the motion on behalf of the plaintiff.

[1] This Memorandum Opinion constitutes the court's findings of fact and conclusions of law.

The issue involved in this action is a matter of preference under 11 U.S.C. § 547. Plaintiff's complaint alleges that CBA Industries received certain payments during the ninety day prepetition period that aggregated $30,354.15, and that those payments satisfied the elements of preferential transfers. CBA Industries defends, alleging that the payments were made on account of debts incurred in the ordinary course of business by both Debtor and defendant, that the payments were in the ordinary course of business and financial affairs of both the Debtor and the defendant, and that the payments were made according to ordinary business terms.

Defendant submitted an affidavit of Carl Casazza, Vice President of Finance at CBA Industries, Inc. Mr. Casazza's affidavit dated February 10, 1999, identified the undisputed facts that CBA had business dealings with the Debtor, Color Tile, commencing February 14, 1993. An exhibit also submitted on behalf of CBA Industries, its Exhibit B, compiled the list of payments received by the defendant from Color Tile from March 7, 1993, through December 29, 1995. The undisputed facts established by Exhibit B were that in the nearly three year business relationship between the parties, the Debtor paid invoices between 15 and 72 days from invoice date, with the average fixed at 41 days. The average time was calculated based on the date of deposit of the check according to Mr. Casazza's affidavit dated February 10, 1999.

The same affidavit also establishes the nature of the creditor's business, which is the delivery of advertising materials to customers that are typically retailers.[2] The affidavit of Mr. Casazza also substantiated that during the 90–day preference period, Debtor paid invoices between 22 and 47 days following the dates when the advertising circulars were distributed. The distribution date was described as

typically the same date as the date of the invoice sent to the Debtor.

In response to the motion for summary judgment, the plaintiff has not submitted a contrary affidavit. Plaintiff has submitted a brief which asserts certain facts that are not supported in the record. The only basis upon which plaintiff disputes CBA's entitlement to summary judgment is that under case law in the Third Circuit, i.e., *In re Molded Acoustical Products, Inc.*, 18 F.3d 217 (3d Cir.1994), and *J P Fyfe, Inc., of Florida v. Bradco Supply Corp.*, 891 F.2d 66 (3d Cir.1989), CBA has not established what the relevant industry is or what the industry norms are.

█ This court finds the February 10 affidavit sufficient to establish the relevant industry. *Molded Acoustical Products* requires evidence only of the range of terms that encompass practices similar in a general way to the defendant's. In some cases, the far more telling questions are how long the parties transacted business before the preference period and what variations in their relationships occurred during that period. Chief Judge Becker's opinion in *Molded Acoustical* stated as the reason to find that the creditor therein had not satisfied a defense to a preference as follows:

> We have without reward scoured the record for evidence of a range of terms and practices in any industry, *or even for a pre-insolvency-period established practice between the parties, close to the ones which prevailed during the preference period.* The scant evidence of industry terms we found had much shorter payment dates (45 days) than what transpired between these parties for most of the period of their relationship (58 days). *But what is clearly the dispositive factor in this case, which allows us to conclude as a matter of law that the payments at issue here were not*

2. Plaintiff's complaint at Paragraph 4 identifies Color Tile as "a leading nationwide retail-

er of floor-covering products."

*"made according to ordinary business terms," is the evidence that the terms dominating throughout the pre-insolvency relationship between the parties (58 days) were far shorter than the preference-(insolvency-) period payment terms (89 days).* [Footnote 15.]

> [Footnote 15:] Even had the 89–day payment period prevailed throughout the parties' relationship, in light of their 18–month pre-insolvency relationship, we think it quite probably too radical a departure from the 45–day industry norm to pass muster under step two of our subsection C analysis. But we need not reach that issue here.

> Moreover, we have before us evidence that Fiber Lite altered its collection practices within the preference period in several ways besides its extension of the debtor's repayment period: it attempted to institute a "payment plan" and successfully mounted its pressure on the debtor to increase its payment. This evidence indicates to us that Fiber Lite itself did not deem its relationship with the debtor to be normal at that time.

*Molded Acoustical Products, Inc.,* 18 F.3d at 228 (emphasis added).

██ The record before this court proves that the Debtor and this creditor had a business relationship that existed for nearly three years before the petition in bankruptcy was filed. There is no evidence of record that the method of billing and/or paying invoices was altered during the preference period. There was no material variation in how long it took Debtor to pay CBA. Although plaintiff asserts that the creditor made one effort on November 16, 1995, to get the Debtor to pay past invoices by sending a fax requesting payment, that evidence is not sufficient to show that the creditor's effort "resembles a calculated response to a deteriorating creditor-debtor relationship." *Id.* There is no evidence that this creditor used economic pressure to take the Debtor's payment out of § 547(c)(2) protection. As Judge Becker noted, ". . . resort to the length of the parties' relationship will remedy many of the defects otherwise apparent in that section [§ 547(c)(2)(C) ]." *Id.* at 224. The unfair advantage of one creditor over another is "reduced if the parties sustained the same relationship for a substantial time frame prior to the debtor's insolvency." *Id.* at 225. Where a trade debt payment is made "according to a longstanding practice between two solvent parties [the payment] most often does not 'prefer' that creditor to the disadvantage of the debtor or other creditors." *Id.* at 225 (footnote omitted).

██ This case falls squarely within the exception to preference recovery dealt with at length by Judge Becker in *In re Molded Acoustical Products, Inc.* Here, the relationship between the parties was not of recent origin, was not formed only after or shortly before the Debtor sailed into financially troubled seas, and the credit terms need not be subjected to rigorous comparison with credit terms used generally in a relevant industry. As Judge Becker said:

> That is because in that class of cases we lack something better to look at to verify that the creditor is not exploiting the debtor's precarious position at the brink of bankruptcy so that it may advantage itself to the detriment of other creditors who continue to extend credit within the letter and spirit of the Code, or at the very least to verify that the creditor is refraining from "unusual" action to collect ordinary debts. In other words, in those situations there is no baseline against which to compare the pre-petition transfers at issue to confirm the parties would have reached the same term absent the looming bankruptcy.

*Id.* at 225–26.

Here, CBA has shown a baseline formed well outside the preference period when Debtor's financial position was not at issue. That baseline carried over into the preference period without material change.

Mr. Casazza's affidavit of February 10, 1999, concludes with the following paragraph:

11. The time and manner of payments made by Color Tile, Inc. to CBA were consistent with the ordinary course of its business dealings with CBA and were not different from CBA's dealings with other retailers for which it makes delivery.

Taken as a whole, the affidavit with the attached exhibit and plaintiff's lack of verification of contrary facts by a person with knowledge substantiates that there are no material facts in dispute such that the court is required to deny the motion for summary judgment. As articulated in the *J P Fyfe, Inc.*, case, 891 F.2d 66, 69–71 (3d Cir.1989), CBA has established that the Debtor incurred the underlying debt in the ordinary course of business between the Debtor and CBA; that the Debtor paid the invoices in the ordinary course of its business and that of CBA; and that the payment was made according to ordinary business terms. This creditor did not accelerate its collection procedures in order to profit over and above other creditors. The parties' relationship both before and during the preference period was, in essence, "business as usual." *In re Molded Acoustical Products, Inc.*, 18 F.3d at 228. This creditor is required to do no more.

Regarding plaintiff's assertion that there is no evidence of the relevant market or norms, Mr. Casazza filed a supplemental affidavit dated April 23, 1999, in which he further identifies the business of CBA. He explains that CBA has been involved with joint ventures which deliver advertising materials and that he is personally familiar with those businesses. In addition, his affidavit explains, based upon his personal review of recent published financial statements for three publicly traded companies in the market—Knightridder, Gannett, and Times Mirror—he was able to calculate their average number of days to collect billed receivables. According to the affidavit, the information was as follows, Knightridder—44.93 days, Gannett—46.43 days, and Times Mirror—54.35 days.

Plaintiff objects to this testimony as "rank hearsay" and moves that the supplemental affidavit be stricken. Yet, plaintiff offers no contrary evidence whatsoever and does not forcefully dispute the calculations.[3] Rather, plaintiff seems to argue that because the record does not support the credit terms themselves (as opposed to the resulting payment period, of which there is some evidence), CBA cannot meet its burden of substantiating industry terms. This court is convinced, however, that *Molded Acoustical Products* does not require a creditor to go so far when its own course of dealing with a debtor encompassed a three-year period prepetition and (1) the payment dates within that three years does not vary significantly from those in the preference period, and (2) the payment dates are within the range of other companies.

Counsel to the plaintiff-Committee, during argument on July 27, 1999, and in its post-argument submissions, presses the point that industry evidence is critical to the outcome. While conceding that its own expert's calculations of the average time it takes to turn receivables into cash was within a few days of CBA's calculations regarding Knightridder, Gannett and Times Mirror, the Committee contends that the calculation is meaningless because (1) CBA has not shown the credit terms offered by the company and (2) the industry segment (delivery of advertising) of the three publicly traded companies was not shown to be that which generated the receivables. CBA counters that the Committee has not produced any evidence of its own to show a material fact in dispute and that its arguments do not account for CBA's witness' (Casazza's) supplemental affidavit which is based on his own famil-

---

**3.** According to its brief, plaintiff's own expert looked at the same data and arrived at slightly different numbers but the differences are not material.

iarity with the advertising delivery business.

As noted above, the court finds that evidence of industry standards is not the sole determinative factor in this dispute because the parties had a lengthy and consistent history that encompassed nearly three years of business dealings. There was no material variance in the payment cycles before the preference period with those during the preference period. Even without considering the supplemental affidavit, we find that the evidence of the relationship of the parties as set forth in Mr. Casazza's original affidavit is sufficient to sustain summary judgment. Adding the information in the Supplemental Affidavit shows the deponent's personal familiarity with industry norms, the range of terms, and the fact that Debtor and CBA's business dealings were within that range.

Because "preference provisions are designed not to disturb normal debtor-creditor relationships, but to derail unusual ones which threaten to heighten the likelihood of the debtor filing for bankruptcy at all...," *Molded Acoustical Products,* 18 F.3d at 224, and there is no evidence to show that this particular relationship was anything other than "normal," summary judgment is appropriate. Thus, CBA's Motion for Summary Judgment will be granted and this adversary against CBA will be dismissed.