In re ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION, Allegheny University of the Health Sciences, Allegheny University Medical Practices, Allegheny Hospitals, Centennial and Allegheny University Hospitals–East, Debtors.

William J. Scharffenberger, As Chapter 11 Trustee of Allegheny Health, Education and Research Foundation, Plaintiff,

v.

United Creditors Alliance Corp., Defendant.

Bankruptcy Nos. 98–25773–MBM to 98–25777–MBM.

Adversary No. 00–2365–MBM.

United States Bankruptcy Court, W.D. Pennsylvania.

April 17, 2003.

Jeffrey Ludwikowski and David Swan, for the trustee.

Peter Lewis and Lisa Kerszencwejg, Pittsburgh, PA, for United Creditors Alliance Corp.

### MEMORANDUM OPINION

M. BRUCE McCULLOUGH, Bankruptcy Judge.

The Chapter 7 Trustee for the above-captioned debtors (hereafter "the Trustee" and "the Debtors") has filed an initial and an amended complaint wherein he seeks, via Count 1 of such complaints, to (a) avoid as preferential under 11 U.S.C. § 547(b) several transfers that the Debtors made to United Creditors Alliance Corp. (hereafter

"UCAC"), and (b) recover such alleged preferential transfers pursuant to 11 U.S.C. § 550(a)(1). The Trustee, in his initial complaint, sought to avoid as preferential, in particular, ten payments to UCAC which total $109,535.02. The Trustee, in his amended complaint, seeks to avoid as preferential two additional payments which total $33,543.56. Because the Court, by Order dated November 13, 2002, granted leave to the Trustee to file his amended complaint, the Trustee thus now seeks to avoid as preferential a grand total of twelve payments to UCAC totalling $143,078.58. The Trustee, via Count 2 of such complaints, also objects to, and consequently seeks to have disallowed, a scheduled claim of UCAC in the amount of $5,384 pursuant to 11 U.S.C. § 502(d) on the ground that UCAC, as is alleged in the Trustee's Count 1, is the transferee of avoidable transfers, which transfers UCAC has thus far refused to return to the Trustee.

UCAC substantively defends against the Trustee's preference claim by (a) apparently disputing two elements of the Trustee's prima facie case for preference under § 547(b), namely whether (i) the Debtors were insolvent during the preference period when the transfers alleged to be preferential were made (§ 547(b)(3)), and (ii) such transfers enabled UCAC to receive more than it would otherwise receive via a Chapter 7 process absent such transfers (§ 547(b)(5)), and (b) asserting that all of the alleged preferential transfers are subject to the "ordinary course of business" preference exception contained in 11 U.S.C. § 547(c)(2). UCAC also has filed what the Court will characterize as simply a motion for reconsideration of the Court's November 13, 2002 Order granting the Trustee leave to amend his complaint (hereafter the "Reconsideration Motion" or "UCAC's Reconsideration Motion"), which motion technically remains pending given

that it has not yet been formally addressed by the Court.

The Court held a trial on the Trustee's amended complaint on February 26, 2003. For the reasons set forth in detail below, the Court rules that (a) the Trustee has, by the necessary preponderance of the evidence, made out a prima facie case for preferential avoidance under § 547(b) of the twelve transfers to UCAC totalling $143,078.58, (b) UCAC has preponderantly established that, pursuant to § 547(c)(2), it may shield from avoidance as a preference seven of the twelve transfers in question, which seven transfers total $16,164.47, and (c) five of the twelve transfers in question, therefore, are avoidable as preferential and recoverable by the Trustee from UCAC via § 550(a)(1), which five transfers total $126,914.11. Based on the preceding ruling, the Court also holds that UCAC's $5,384 scheduled claim is conditionally disallowed pursuant to § 502(d) unless and until UCAC disgorges to the Trustee the $126,914.11 in transfers that are avoided by virtue of the instant Memorandum Opinion and accompanying Order of Court. Finally, and for reasons also set forth below, the Court denies with prejudice UCAC's Reconsideration Motion.

### STATEMENT OF FACTS

The Debtors filed voluntary petitions for bankruptcy relief under Chapter 11 on July 21, 1998. *See* Stip. ¶ 1. The twelve transfers from the Debtors to UCAC which the Trustee now seeks to avoid as preferential consist of nine checks from the Debtors to UCAC dated May 15, 1998, that cleared on May 29, 1998, and three checks from the Debtors to UCAC dated June 19, 1998, that cleared on July 2, 1998. *See* Am. Compl. ¶ 11; Stip. ¶¶ 9–11 (referencing as Exhibit 2 to such stipulation a "summarization chart" containing, *inter alia*, information regarding dates of such checks and when such checks cleared); Stip. Ex. 2 ("summarization chart," which chart is also attached to Wanda Lewis Aff. filed Sept. 18, 2002, in support of prior UCAC summary judgment motion) (Items A—L on such chart). The total amount of such checks, as set forth above, equals $143,078.58. *See Id.*

UCAC entered into a contract with the Debtors on April 5, 1996, to provide collection services to the Debtors for the Debtors' outstanding accounts receivable. *See* Stip. ¶ 8 (referencing as Exhibit 1 to such stipulation a copy of the Collection Service Agreement between the Debtors and UCAC) & Stip. Ex. 1 (copy of such agreement, which copy is also attached to Wanda Lewis Aff. filed Sept. 18, 2002, in support of prior UCAC summary judgment motion). According to the contract between the Debtors and UCAC, UCAC was obligated to remit all proceeds obtained from the collection of the Debtors' receivables to the Debtor. *See* Stip. Ex. 1, ¶ 1A ("Collector [ (ie., UCAC) ] will transfer all monies received to Client monthly GROSS;" the term "GROSS" inserted by handwriting). Therefore, UCAC did not obtain payment for the fees that it earned for the services that it provided to the Debtors by netting out such fees against the collection proceeds; instead, UCAC billed the Debtors periodically for such fees. *See* Stip. ¶ 8. The first invoice for such fees charged by UCAC is dated February 13, 1997. *See* Stip. Ex. 2 (Item M). For the entire contractual relationship between the Debtors and UCAC, UCAC submitted thirty (30) invoices for payment by the Debtors for total fees earned of $376,833.44. *See* Stip. ¶ 10 & Stip. Ex. 2. Each bill or invoice submitted to the Debtors for payment was due upon its receipt by the Debtors. *See* Feb. 26, 2003 Trial Tr., at p. 30, lines 12–16 (Wanda Lewis testimony).

The Debtors paid each of the thirty invoices by way of separate checks; thus thirty separate checks were cut to UCAC. *See* Stip. ¶ 10 & Stip. Ex. 2. The first such check, which satisfied the first invoice submitted by UCAC, is dated July 22, 1997. *See* Stip. Ex. 2 (Item M). Included among the thirty separate checks are the twelve that comprise the transfers which the Trustee now seeks to avoid as having been preferential. *See Id.* (Items A–L).

The invoice and payment history between the Debtors and UCAC for the entire length of their contractual relationship is set forth in relevant detail in the table that follows (hereafter "the History Table"), which table is a partial reproduction of the more detailed table that (a) is the subject of paragraph 9 of the Factual Stipulations between the Trustee and UCAC, and (b) comprises Exhibit 2 to such stipulations:

| | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| Items | UCAC Invoice Date | Date of Debtors' Check | Date Debtors' Check Cleared | Amount of Debtors' Check | # of Days col. 1 v. col. 2 | # of Days col. 1 v. col. 3 |
| A | 12/8/97 | 5/15/98 | 5/29/98 | $ 18,552.66 | 158 | 172 |
| B | 12/22/97 | 5/15/98 | 5/29/98 | $ 3,602.29 | 144 | 158 |
| C | 12/22/97 | 5/15/98 | 5/29/98 | $ 2,779.49 | 144 | 158 |
| D | 12/30/97 | 5/15/98 | 5/29/98 | $ 2,421.67 | 136 | 150 |
| E | 12/29/97 | 5/15/98 | 5/29/98 | $ 1,587.89 | 137 | 151 |
| F | 12/22/97 | 5/15/98 | 5/29/98 | $ 226.41 | 144 | 158 |
| G | 12/22/97 | 5/15/98 | 5/29/98 | $ 165.99 | 144 | 158 |
| H | 1/6/98 | 6/19/98 | 7/2/98 | $ 50,089.36 | 164 | 177 |
| I | 1/6/98 | 6/19/98 | 7/2/98 | $ 24,728.53 | 164 | 177 |
| J | 2/3/98 | 6/19/98 | 7/2/98 | $ 5,380.73 | 136 | 149 |
| K | 10/21/97 | 5/15/98 | 5/29/98 | $ 20,382.54 | 206 | 220 |
| L | 10/21/97 | 5/15/98 | 5/29/98 | $ 13,161.02 | 206 | 220 |
| M | 2/13/97 | 7/22/97 | _/_/_ | $ 14,827.61 | 159 | _/_/_ |
| N | 2/28/97 | 7/22/97 | _/_/_ | $ 20,804.70 | 144 | _/_/_ |
| O | 3/14/97 | 11/12/97 | _/_/_ | $ 20,003.09 | 243 | _/_/_ |
| P | 3/27/97 | 11/12/97 | _/_/_ | $ 11,688.03 | 230 | _/_/_ |
| Q | 4/12/97 | 11/17/97 | _/_/_ | $ 9,572.88 | 219 | _/_/_ |
| R | 4/26/97 | 11/17/97 | _/_/_ | $ 12,819.19 | 205 | _/_/_ |
| S | 5/14/97 | 11/17/97 | _/_/_ | $ 14,740.40 | 187 | _/_/_ |
| T | 5/29/97 | 11/17/97 | _/_/_ | $ 9,016.70 | 172 | _/_/_ |
| U | 6/12/97 | 11/17/97 | _/_/_ | $ 14,044.29 | 158 | _/_/_ |
| V | 6/27/97 | 11/17/97 | _/_/_ | $ 17,532.53 | 143 | _/_/_ |
| W | 8/27/97 | 12/3/97 | _/_/_ | $ 19.69 | 98 | _/_/_ |
| X | 8/27/97 | 12/3/97 | _/_/_ | $ 7,920.20 | 98 | _/_/_ |
| Y | 8/27/97 | 12/3/97 | _/_/_ | $ 20,711.78 | 98 | _/_/_ |
| Z | 9/10/97 | 12/5/97 | _/_/_ | $ 25,884.23 | 86 | _/_/_ |
| AA | 9/12/97 | 12/5/97 | _/_/_ | $ 1,471.21 | 84 | _/_/_ |
| BB | 9/19/97 | 12/5/97 | _/_/_ | $ 16,799.15 | 77 | _/_/_ |
| CC | 9/19/97 | 12/5/97 | _/_/_ | $ 14,979.71 | 77 | _/_/_ |
| DD | 9/22/97 | 12/5/97 | _/_/_ | $ 919.47 | 74 | _/_/_ |

| | Period | Total Amount | Average | Average |
|---|---|---|---|---|
| A–DD | Overall | $376,833.44 | 147.8 | |
| M–DD | Pre–Preference | $233,754.86 | 141.8 | |
| A–L | Preference | $143,078.58 | 156.9 | 170.7 |

*See* Stip. ¶ 9 & Stip. Ex. 2.

### DISCUSSION

**I. The Trustee's Preference Claim— Count 1.**

■ The Trustee, in his Count 1, contends that the twelve transfers from the Debtors to UCAC by way of the twelve checks that are designated respectively as Items A—L in the History Table (hereafter referred to either collectively as "Checks A—L" or singularly as "Check A," "Check B," etc.), which checks total $143,078.58 in amount, are preferential and avoidable as such pursuant to § 547(b). 11 U.S.C. § 547(b) provides, in pertinent part, that:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> (A) on or within 90 days before the date of the filing of the petition; ... and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;
>
> (B) the transfer had not been made; and

> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C.A. § 547(b) (West 1993). "Under section 547(g), the trustee has the burden of proving by a preponderance of the evidence every essential, controverted element [under § 547(b)] resulting in the preference." 5 *Collier on Bankruptcy* ¶ 547.13 at 547–100 (Bender 2003).

**A. The Trustee's Prima Facie Case under § 547(b).**

The Trustee contends that the twelve transfers in the form of Checks A—L are preferential because each such transfer (a) was made directly to UCAC, (b) was made on account of an antecedent bill or invoice submitted from UCAC, (c) was made while the Debtors were insolvent, (d) was made within 90 days prior to July 21, 1998, which is when the Debtors entered bankruptcy, and (e) enables UCAC to receive more than UCAC would otherwise receive via a Chapter 7 process absent such transfers. UCAC, in its answers to both the Trustee's initial and amended complaints, denies each of the aforesaid contentions of the Trustee.

UCAC's denials notwithstanding, UCAC has, via paragraph 9 of the Factual Stipulations, stipulated to the invoice and payment history between the Debtors and UCAC set forth in the table that comprises Exhibit 2 to such stipulations, which table is identically reproduced in pertinent part in the History Table. Consequently, UCAC is necessarily deemed to have stipulated as well that (a) the transfers in the form of Checks A—L were made to UCAC, (b) each such check was transferred on account of an antecedent debt owed by the Debtors to UCAC given that,

as the History Table reveals, the date of the invoice that corresponds to each such check precedes the date of each such check, and (c) the transfers in the form of Checks A—L were made by the Debtors within the 90–day period prior to the Debtors' entrance into bankruptcy (hereafter "the Preference Period") given (i) that, since the Debtors entered into bankruptcy on July 21, 1998, the Preference Period commenced approximately on April 21, 1998, and (ii) that, as the History Table reveals, each of Checks A—L both was dated and cleared subsequent to April 21, 1998. In light of the preceding deemed stipulations by UCAC, the Trustee has preponderantly satisfied the elements of his prima facie preference case against UCAC that are contained in § 547(b)(1), (2) & (4).

■■■ As for § 547(b)(3), the Court understands UCAC, in addition to its aforesaid denial of the Trustee's allegation that the Debtors were insolvent when Checks A—L were transferred by the Debtors to UCAC, to contend that the Trustee (a) has failed to offer any proof as to such insolvency on the Debtors' part, and (b) consequently fails to satisfy his evidentiary burden with respect to the prima facie "insolvency" element set forth in § 547(b)(3). The Trustee concedes that he has not offered evidence as to the requisite Debtors' insolvency. However, each of Checks A—L was, as set forth above, transferred to UCAC within the Preference Period. Furthermore, the Debtors are presumed, for purposes of § 547, to have been insolvent throughout the Preference Period. *See* 11 U.S.C.A. § 547(f) (West 1993). Moreover, such presumption of insolvency under § 547(f) operates such that the Trustee has no obligation to come forward with evidence to demonstrate the Debtors' insolvency unless and until UCAC comes forward with some evidence

to rebut such presumption. *See In re Old Electralloy Corp.*, 164 B.R. 501, 504 (Bankr.W.D.Pa.1994); *In re I.M. Import & Export, Inc.*, 2001 WL 214026 at *4 (Bankr.S.D.Fla.2001); *In re Ajayem Lumber Corp.*, 145 B.R. 813, 817 (Bankr. S.D.N.Y.1992); *In re Gilbertson*, 90 B.R. 1006, 1009 (Bankr.D.N.D.1988); *In re Molded Acoustical Products, Inc.*, 150 B.R. 608, 614 (E.D.Pa.1993), *aff'd*, 18 F.3d 217 (3rd Cir.1994); *In re Perry, Adams and Lewis Securities, Inc.*, 34 B.R. 155, 157 (Bankr.W.D.Mo.1983); *In re Crisp*, 1986 WL 22357 at *2 (Bankr.W.D.Mo. 1986); 5 *Collier on Bankruptcy* ¶ 547.03[5] at 547–39 (pointing out in footnote parentheticals that the § 547(f) presumption is of the type described in Fed.R.Evid. 301—legislative history to § 547(f) also supports this conclusion) & ¶ 547.13 at 547–101; 10 *Collier on Bankruptcy* ¶ 7056.07 at 7056–11 (Bender 2003). As for the quality of such rebuttal evidence, "[e]vidence constituting mere speculation as to whether the [D]ebtor[s] w[ere] insolvent is not sufficient to rebut the presumption." *Molded Acoustical*, 150 B.R. at 614 (citing *In re Emerald Oil Co.*, 695 F.2d 833, 838–839 (5th Cir.1983)). The Trustee maintains that he may rely upon the § 547(f) presumption in establishing the requisite insolvency of the Debtors for purposes of § 547(b)(3). Unfortunately for UCAC, the Court must so agree with the Trustee because the Court is unaware of any evidence that UCAC has offered to rebut the § 547(f) presumption of the Debtors' insolvency save for, at best, mere speculation that the Debtors were solvent. Therefore, the Trustee, by virtue of the operation of the § 547(f) presumption of the Debtors' insolvency, preponderantly establishes as fact that the Debtors were insolvent when they transferred Checks A—L to UCAC; accordingly, the Trustee satisfies § 547(b)(3).

■ Finally, UCAC fails to inform the Court, if it ever put the Trustee on notice, as to why it contends that (a) the transfers of Checks A—L did not enable UCAC to receive more than it would otherwise receive via a Chapter 7 process absent such transfers, and (b) the Trustee cannot accordingly satisfy § 547(b)(5). Therefore, the Court can only guess that UCAC attempts to leverage off of its argument that the Debtors have not been proven by the Trustee to have been insolvent and so to argue, in turn, that it is at least as likely as not—in other words, that the Trustee has failed to contrarily prove by sufficient evidence—that (a) the Debtors were solvent, (b) the unsecured creditor body of the Debtors would have received full payment on its claims if the instant case were in Chapter 7, and (c) the transfers of Checks A—L to UCAC thus did not enable UCAC to receive more than it would have received via a Chapter 7 distribution absent such transfers. However, and unfortunately for UCAC, to the extent that it advances such a position, such position is unavailing given that, as the Court has already held, the Trustee has preponderantly proven as fact that the Debtors were insolvent when they transferred Checks A—L to UCAC. Because the Debtors' insolvency has been established, and since insolvency under the Bankruptcy Code is essentially defined as an excess of debt over assets when assets are valued at fair market value, *see* 11 U.S.C.A. § 101(32)(A) (West 1993), and given that an unsecured creditor body necessarily cannot receive a 100 percent distribution on its claims if a debtor's assets are not sufficient in value to cover all of its indebtedness, the Trustee has preponderantly proven that the unsecured creditor body of the Debtors will receive a less than 100 percent distribution on its claims. The preceding conclusion is pivotal with respect to the resolution of § 547(b)(5) vis-a-vis the transfer of Checks A—L to UCAC because, "as long as the distribution in bankruptcy is less than one-hundred percent, any payment 'on account' to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made." 5 *Collier on Bankruptcy* ¶ 547.03[7] at 547–45. Therefore, the Trustee satisfies § 547(b)(5).

In light of the foregoing, the Trustee has, by the necessary preponderance of the evidence, made out a prima facie case for preferential avoidance under § 547(b) of the transfers to UCAC of Checks A—L.

**B. Checks A—L and the "Ordinary Course of Business" Preference Exception Contained in § 547(c)(2).**

■ 11 U.S.C. § 547(c)(2) provides that: The trustee may not avoid under this section a transfer—

\* \* \*

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(c) made according to ordinary business terms[.]

11 U.S.C.A. § 547(c)(2) (West 1993). "[T]he defendant in the preference action . . . must prove by a preponderance of the evidence every element necessary to establish . . . [such] exception." 5 *Collier on Bankruptcy* ¶ 547.13 at 547–101.

The Trustee concedes that UCAC has satisfied § 547(c)(2)(A) with respect to each of Checks A—L and that UCAC also

has satisfied § 547(c)(2)(B) with respect to all of such checks excepting for Checks K and L. *See* Stip. ¶ 12 (the two checks which the parties agree are excepted from their § 547(c)(2)(B) stipulation equal $33,543.56, which checks are denoted herein as Checks K and L).[1] The parties agree that they disagree as to whether UCAC can satisfy § 547(c)(2)(C) with respect to any of Checks A—L. *See* Stip. ¶ 12.

### (i) *§ 547(c)(2)(B) and Checks K and L.*

 "The controlling factor [in determining whether, under § 547(c)(2)(B), particular preference period transfers were made in the ordinary course of business of the debtor and the transferee,] is whether the transactions between the debtor and the creditor both before and during the ninety-day [preference] period were consistent." 5 *Collier on Bankruptcy* ¶ 547.04[2][a][ii][B] at 547–58. Before a court can engage in an analysis regarding such consistency, "the defendant [ (ie., the transferee) ] must [necessarily] establish a 'baseline of dealing' [pre-preference period] so that the court may compare the transfers made during the preference period with the parties' prior course of dealings." *Id.* Among the factors that courts consider when ascertaining whether a preference period transaction is consistent with pre-preference period transactions are:

[ (1) ] the length of time the parties have engaged in the type of dealing at issue, [ (2) ] whether the subject transfer was in an amount more than usually paid, [ (3) ] whether the payments were tendered in a manner different from previous payments, [ (4) ] whether there

appears any unusual action by either the debtor or creditor to collect or pay on the debt, and [ (5) ] whether the creditor did anything to gain an advantage (such as gain additional security) in light of the debtor's deteriorating financial condition.

*In re Richardson,* 94 B.R. 56, 60 (Bankr. E.D.Pa.1988) (citations omitted) (also quoted in *In re R.M.L., Inc.,* 195 B.R. 602, 613 (Bankr.M.D.Pa.1996)).

UCAC maintains that Checks K and L are consistent with the checks that the Debtors transferred to UCAC prior to the Preference Period, which latter checks are designated respectively as Items M—DD in the History Table (hereafter referred to either collectively as "Checks M—DD" or singularly as "Check M," "Check N," etc.). The Court understands UCAC, in support of its argument that Checks K and L are consistent with Checks M—DD, to focus solely on the timing of such checks or, more particularly, on the length of time that passed between UCAC's invoice date and the relevant date regarding each such check—ie., the date of such checks, the date when such checks cleared, and/or the date when such checks were deposited or posted to an account of UCAC. Thus, UCAC appears to focus solely on the third of the five factors cited above from *Richardson* or, more specifically, whether the manner of tender vis-a-vis Checks K and L differs from the manner of tender experienced vis-a-vis Checks M—DD. The Trustee criticizes UCAC for so confining its focus and argues, as well, that significant inconsistency is demonstrated when one considers the second of the *Richardson* factors, that is to say when one considers

---

1. The Court is bewildered as to why the parties agree that the two checks that are excepted from their § 547(c)(2)(B) stipulation, which checks the parties agree are equal to $33,543.56 and which checks are denoted

herein as Checks K and L, cleared on February 28, 1998, and March 29, 1998. As set forth in the History Table, Checks K and L both cleared on May 29, 1998.

the contrast between the amount of each of Checks A—L relative to the amount of each of Checks M—DD.

The Court, for several reasons, agrees with the subject of UCAC's focus relative to the § 547(c)(2)(B) issue vis-a-vis Checks K and L. First, the Court disagrees with the Trustee that Checks K and L can be shown to be inconsistent with Checks M—DD on the basis of the respective amounts of such checks. In fact, and as the History Table reveals, the amounts of Checks K and L are very much in line with the amounts of Checks M—DD. It is true, as the Trustee points out, that the amount of one of Checks A—L stands out in contrast to the amount of each of Checks M—DD, namely Check H in the amount of $50,089.36. Unfortunately for the Trustee, however, the disparity between the amounts of Check H and each of Checks M—DD is immaterial because (a) the Trustee has already stipulated that UCAC satisfies § 547(c)(2)(B) with respect to Check H, and (b) such disparity is irrelevant to the comparison between Checks K and L, on the one hand, and Checks M—DD, on the other hand, which comparison is the only one that is relevant to the matter at hand. Therefore, an analysis of the amounts of Checks K, L, and M—DD does not reveal any inconsistency between such checks. Second, the parties did not present any evidence respecting the first, fourth, or fifth factors set forth in *Richardson* from which the Court could ascertain an inconsistency between Checks K and L, on the one hand, and Checks M—DD, on the other hand. However, and as UCAC apparently perceives itself, an issue does exist as to, and thus the Court will decide the § 547(c)(2)(B) issue vis-a-vis Checks K and L by resolving, whether the timeliness of the tender of Checks K and L differs significantly from the timeliness of the tender of Checks M—DD.

At the outset, the Court agrees with UCAC that, when attempting to demonstrate the requisite consistency regarding the timeliness of the tender of Checks K and L, on the one hand, and the timeliness of the tender of Checks M—DD, on the other hand, UCAC need only show that the timeliness of the tender of Checks K and L bears "some consistency [with,] ... rather than a rigid conformance to[,]" the timeliness of the tender of Checks M—DD. *R.M.L., Inc.*, 195 B.R. at 613. The Court also holds that, when assessing such consistency, the relevant date regarding such checks is the date of such checks rather than the date upon which the same either cleared or were deposited/posted to an account of UCAC. The Court arrives at the latter holding because (a) the date when such checks cleared cannot be used as a figure for comparison given that the parties failed to ascertain such clearing date for Checks M—DD, and (b) the date when such checks were deposited or posted to an account of UCAC simply says nothing regarding when such checks were actually transferred by the Debtors.

UCAC, in support of its position that such requisite consistency exists, makes four discernable arguments. First, UCAC (a) observes that Checks K and L were paid 206 days subsequent to the dates of the UCAC invoices which were respectively satisfied with such checks, (b) observes that four of Checks M—DD—in particular, Checks O—R—were paid between 205 and 243 days subsequent to the dates of the UCAC invoices which were respectively satisfied with such checks, and (c) argues that the preceding observations demonstrate the requisite consistency as to the timeliness of the tender of Checks K, L, and M—DD. Second, UCAC (a) observes that the percentage of total checks paid more than 200 days subsequent to corresponding invoice date pre-Preference Peri-

od as compared to Preference Period is similar—respectively, 22.2% and 16.7%, and (b) argues that such observation also proves its position. Third, UCAC (a) observes that Checks M—DD were paid in groups of several checks on five particular dates, (b) observes that Checks A—L were paid in two groups of checks on two particular dates, (c) notes some similarities between the pre-Preference Period and Preference Period groupings of checks, and (d) argues that such similarities between such groupings also demonstrate the requisite consistency as to the timeliness of the tender of Checks K, L, and M—DD. Fourth, UCAC (a) notes that the average length of time that passed between invoice date and check date for Checks A—L equals roughly 157 days, (b) notes that the same average for Checks M—DD equals roughly 142 days, (c) argues that the difference between 157 and 142 days is insignificant, and (d) argues that such similarity between such average figures proves its position. As the History Table reveals, all of the observations of UCAC are correct. Furthermore, the Court does not understand the Trustee to quarrel with the substance of such observations. However, the Trustee disagrees, as does the Court for the reasons set forth below, with the conclusions that UCAC draws from such observations.

 Taking UCAC's fourth argument above first, the Court rejects the same because, even if a 15–day disparity between the pre-Preference Period and Preference Period averages for length of time to pay—ie., 142 days vs. 157 days—is arguably insignificant, such conclusion says nothing about whether 206 days from invoice date to check date—ie., the length of time to pay for Checks K and L—is, in particular, consistent with the length of time to pay for Checks M—DD, which latter issue is the only one that the Court need concern itself with when determining whether Checks K and L satisfy § 547(c)(2)(B). As for the first three of UCAC's arguments as they are recounted above, the Court rejects the same because none of them take into consideration what the Court discerns, from examining the History Table, was a clear and unmistakable pattern by the Debtors to pay UCAC invoices in a progressively quicker fashion prior to the Preference Period. In particular, the History Table reveals that, after paying Check O 243 days after the corresponding UCAC invoice date, the Debtors cut the remaining 15 checks that were paid prior to the Preference Period—ie., Checks P—DD—in a progressively quicker fashion, culminating in the last eight of such checks—ie., Checks W—DD—being paid between 74 and 98 days subsequent to the corresponding UCAC invoice date. Because such pattern of payment by the Debtors pre-Preference Period is clear and unmistakable, the Court finds that the "baseline of dealing" between the Debtors and UCAC pre-Preference Period against which the timeliness of the tender of Checks K and L must be compared is a 74– to 98–day length of time to pay—ie., a period of 74 to 98 days from relevant UCAC invoice date to check date. Because Checks K and L were paid 206 days subsequent to the dates of the UCAC invoices which were respectively satisfied with such checks, and since 206 days is a substantially longer period of time to pay than the established 74– to 98–day "baseline of dealing" regarding time to pay, the timeliness of the tender of Checks K and L is not consistent with the timeliness of the tender of Checks M—DD.[2] Moreover, even

2. Because the Court finds that the "baseline of dealing" between the Debtors and UCAC pre-Preference Period is a 74– to 98–day length of time to pay, and since, as the Histo-

if the Court were not inclined to find that the "baseline of dealing" between the Debtors and UCAC pre-Preference Period is a 74– to 98–day length of time to pay, the Court certainly holds, in any event, that such "baseline" would not exceed the average length of time that passed between invoice date and check date for Checks M—DD, or, as revealed in the History Table, roughly 142 days. The Court arrives at the immediately preceding holding because, in the Court's view, a baseline in the form of such average length of time to pay, which baseline, as set forth above, need not be rigidly conformed to, more accurately captures the essence of the dealings between the Debtors and UCAC pre-Preference Period than does a baseline in the form of a range, as UCAC would have this Court accept, that includes the time to pay period for every check exchanged between the Debtors and UCAC pre-Preference Period regardless of (a) the wide disparity among such checks' time to pay periods—ie., as the History Table reveals, anywhere from 74 to 243 days, and (b) a consideration as to whether certain of such checks' time to pay periods fall outside the parties' normal, ordinary course of dealing. Indeed, for the Court to accept UCAC's argument that the "baseline of dealing" between the Debtors and UCAC pre-Preference Period should equal a range comprised of the time to pay period for every check exchanged between the Debtors and UCAC pre-Preference Period, the Court would necessarily also need to accept, as a predicate, that every such check's time to pay period falls within the bounds of the parties' normal, ordinary course of dealing, which predicate (a) would need to be, but has not been, proven by UCAC, (b) is also not persuasive to the Court as a matter of logic, particularly given the aforesaid wide disparity among such time to pay periods and the aforesaid pattern by the Debtors pre-Preference Period to pay UCAC invoices in a progressively quicker fashion, and (c) thus is unacceptable to the Court. Because the 206–day time to pay period for Checks K and L is also a substantially longer period of time to pay than is 142 days, the timeliness of the tender of Checks K and L, in any event, is thus not consistent with the timeliness of the tender of Checks M—DD.

Based upon the foregoing, the Court must (a) find that Checks K and L are not consistent with Checks M—DD, (b) conclude that UCAC satisfies neither § 547(c)(2)(B) nor, consequently, § 547(c)(2) with respect to Checks K and L, *see* 5 *Collier on Bankruptcy* ¶ 547.04[2][a] at 547–54 (§ 547(c)(2) preference exception is only successful if all of the elements contained in paragraphs (A)—(C) thereof are satisfied); *Molded Acoustical*, 18 F.3d at 223 ("three subparts

---

ry Table reveals, the lengths of time to pay for Checks A—J range from 136 to 164 days, and given that 74 to 98 days to pay seems to be substantially less than 136 to 164 days to pay, the Court, absent the parties' stipulation regarding § 547(c)(2)(B) and Checks A—J, likely would have found as well that (a) the timeliness of the tender of Checks A—J is not consistent with the timeliness of the tender of Checks M—DD, and (b) UCAC consequently does not satisfy § 547(c)(2)(B) with respect to Checks A—J. However, the parties have stipulated that § 547(c)(2)(B) is met with respect to Checks A—J, which stipulation the Court

will not disturb, particularly given that the same has already been approved by the Court. The preceding notwithstanding, the parties stipulated to neither the "baseline of dealing" between the Debtors and UCAC pre-Preference Period nor, for that matter, any other fact relevant to a § 547(c)(2)(B) determination, which means that such facts are fair game for the Court to find on its own as the Court proceeds to resolve whether (a) § 547(c)(2)(B) is met with respect to Checks K and L, and (b) § 547(c)(2)(C) is met with respect to any of Checks A—L.

[of § 547(c)(2)] must be read in the conjunctive"), and (c) consequently hold that the Debtors' transfer of Checks K and L to UCAC is preferential and avoidable as such pursuant to § 547(b).

### (ii) § 547(c)(2)(C) and Checks A—L.

 The Third Circuit in *Molded Acoustical* set forth the standard by which this Court must resolve whether UCAC has satisfied § 547(c)(2)(C) with respect to Checks A—L, which standard follows:

> In sum, we read subsection C as establishing a requirement that a creditor prove that the debtor made its pre-petition preferential transfers in harmony with the range of terms prevailing as some relevant industry's norms. That is, subsection C allows the creditor considerable latitude in defining what the relevant industry is, and even departures from that relevant industry's norms which are not so flagrant as to be "unusual" remain within subsection C's protection. In addition, when the parties have had an enduring, steady relationship, one whose terms have not significantly changed during the pre-petition insolvency period, the creditor will be able to depart substantially from the range of terms established under the objective industry standard inquiry and still find a haven in subsection C.

*Molded Acoustical,* 18 F.3d at 226.

UCAC argues, and the Court agrees, that at least one lower court decision within the Third Circuit, which decision construed the Third Circuit's decision in *Molded Acoustical,* can be cited for the apparent proposition that a transferee can satisfy § 547(c)(2)(C) without presenting

any industry standard evidence if certain conditions are met. *See In re Color Tile, Inc.,* 239 B.R. 872, 875–877 (Bankr.D.Del. 1999). In particular, the *Color Tile* court appears to have held that a transferee can dispense with industry standard evidence and still prevail under § 547(c)(2)(C) if such transferee can preponderantly prove (a) the existence of a sufficiently lengthy pre-preference period relationship between such transferee and the debtor in question, *see Id.* at 875–876, (b) that the pre-preference period transfers from such debtor to such transferee were made according to a longstanding practice between both, that is such transfers were, for the most part, consistent among themselves in all facets, *see Id.* at 875 (" 'the parties sustained the same relationship for a substantial time frame prior to the debtor's insolvency,' " "trade debt payment is made 'according to a longstanding practice between two solvent parties,' " and "CBA [ (the transferee) ] has shown a baseline formed well outside the preference period"), and (c) that no significant variations exist in any facet as between preference period transfers and pre-preference period transfers from such debtor to such transferee, *see Id.* at 875–877. Although neither bound by, nor entirely convinced by the reasoning of, the *Color Tile* decision,[3] this Court will suppose that it is conceivable, at least theoretically, for a transferee to satisfy § 547(c)(2)(C), consistent with the Third Circuit decision in *Molded Acoustical,* without presenting industry standard evidence. However, before industry standard evidence could ever be so dispensed with in its entirety, a transferee would need to, *inter alia,* preponderantly prove, as this Court presumes was sufficiently demon-

---

**3.** See the Court's discussion *infra* at p. 93 n. 5 regarding its skepticism as to whether a transferee can, consistent with Third Circuit precedent in the form of its *Molded Acoustical*

decision, both (a) dispense entirely with the presentation of industry standard evidence, and (b) prevail under § 547(c)(2)(C).

strated to the court in *Color Tile* with respect to the facts therein, that such transferee's pre-preference period relationship with the debtor in question was of sufficiently lengthy duration that industry standard evidence need not be presented. Because the Court does not understand the lower court decision in *Color Tile,* much less the Third Circuit decision in *Molded Acoustical,* to set forth a rigid test or, for that matter, any type of methodology for determining when a transferee's pre-preference period relationship with a debtor has endured long enough such that industry standard evidence need not be presented, the Court is free to, and thus does, hold that such determination is peculiarly factual so that what will suffice as such a sufficiently lengthy relationship will differ from case to case depending upon the circumstances that are so presented.

UCAC argues that it need not produce any industry standard evidence in order to prevail under § 547(c)(2)(C) because, according to UCAC, (a) its pre-Preference Period relationship with the Debtors endured long enough such that industry standard evidence may be dispensed with, (b) the pre-Preference Period transfers from the Debtors to UCAC—ie., Checks M—DD—were consistent among themselves in all facets, and (c) no significant variations exist in any facet as between Checks M—DD, on the one hand, and Checks A—L, on the other hand. Alternatively, UCAC argues that the nature of the entirety of its relationship with the Debtors, both with respect to length and consistency, is such that UCAC may (a) depart substantially from whatever is determined to be the range of terms that comprise the standard for whatever is determined to be the relevant industry, and (b) still find a haven in § 547(c)(2)(C) such departure notwithstanding. The Trustee, as one would expect, disagrees with both of the preceding positions by UCAC.

 The Court draws the following relevant conclusions regarding the nature of UCAC's relationship with the Debtors, both with respect to length and consistency of such relationship:

(a) UCAC's pre-Preference Period relationship with the Debtors did not endure long enough such that UCAC may satisfy § 547(c)(2)(C) without producing any industry standard evidence. The Court draws such conclusion because (i) the entire length of such pre-Preference Period relationship, as the parties agree, only equals roughly two years (ie., May 5, 1996, to April 21, 1998), and (ii) the Court does not find that a pre-preference period relationship of merely two years is long enough, under practically any scenario much less the circumstances, as set forth in greater detail in the ensuing paragraph (b), that existed between UCAC and the Debtors pre-Preference Period, to allow a transferee to prevail under § 547(c)(2)(C) without presenting any industry standard evidence.

(b) UCAC's pre-Preference Period relationship with the Debtors did not endure long enough such that UCAC may depart substantially from what is determined to be the relevant industry norm and still prevail under § 547(c)(2)(C). The Court arrives at the preceding conclusion for two reasons. First, the Court does not believe that a pre-preference period relationship of two years is, in and of itself, especially long so as to permit a transferee substantial leeway from establishing conformance of preference period transfers to a relevant industry standard. Second, and perhaps most importantly, the Court

concludes that, even if a two-year pre-preference period relationship is generally entitled to a substantial amount of such leeway, such is not the case, in particular, with respect to UCAC's pre-Preference Period relationship with the Debtors given that (i) the industry norm at issue in the instant matter respects the timeliness of the tender of checks, and (ii) the payment history between UCAC and the Debtors during the pre-Preference Period lasted but roughly ten months (ie., February 13, 1997—UCAC invoice date for Item M in the History Chart—to December 5, 1997—date of the Debtors' Check DD). The Court arrives at the last conclusion because the Court concludes, in turn, that (i) a two-year pre-preference period relationship, even if it is generally considered to be of a lengthy duration, is never long enough to warrant a substantial departure from an industry norm regarding the timeliness of the tender of checks if the payment history of a transferee and a debtor fails to largely consume such two-year relationship, and (ii) a payment history fails to largely consume a two-year relationship if it is, as in the instant matter, no more than ten months in length. The Court concludes as it does because of the rationale behind allowing a transferee, on the strength of a cemented pre-preference period relationship between such transferee and a debtor, leeway from having to establish conformance of preference period transfers to a relevant industry standard, to wit that a pre-preference period baseline, provided that there is a sufficient history of pre-preference period transfers from which to accurately establish such baseline, af-fords a court a better benchmark than does some industry norm for assessing the normalcy of preference period transfers. See *Molded Acoustical,* 18 F.3d at 225–226 (pointing out that "[w]hen the relationship between the parties is of recent origin, . . . we lack something better [than industry standard evidence] to look at to verify that the creditor is not exploiting the debtor's precarious position at the brink of bankruptcy . . ., or at the very least to verify that the creditor is refraining from 'unusual' action to collect ordinary debts"). Such rationale does not hold true if the pre-preference period baseline sought to be utilized as a benchmark is gathered from, as in the instant matter, a relatively small pool of invoices and payments that stretch over a correspondingly small period of time because, in that situation, the accuracy and, thus, the usefulness of such pre-preference period baseline as a benchmark is called into question.

(c) The Preference Period transfers (ie., Checks A—L), on the one hand, and the pre-Preference Period transfers (ie., Checks M—DD), on the other hand, vary significantly and materially with respect to, in particular, the timeliness of the tender of such checks (ie., the length of time that passed between the dates of an UCAC invoice and the check cut in response to such invoice). The Court draws the preceding conclusion (i) because, as set forth above, the "baseline of dealing" between the Debtors and UCAC pre-Preference Period or, stated differently, with respect to Checks M—DD regarding, in particular, the length of time to pay is a 74– to 98–day length of time

to pay, *see supra* p. 19, (ii) since, as the History Table reveals, Checks A—L were paid anywhere from 136 days to 206 days subsequent to the date of the corresponding UCAC invoice, and (iii) since each of Checks A—L was consequently paid at least 38 days outside of the established relevant "baseline of dealing" between the Debtors and UCAC pre-Preference Period—ie., 136 days as compared to 98 days. The same conclusion also follows to a large extent if the relevant baseline is taken to be a 142–day length of time to pay, which figure the Court has already held is the outside limit for the relevant baseline, *see supra* p. 20, because (i) five of Checks A—L, as the History Table reveals, were paid anywhere from 158 days to 206 days subsequent to the date of the corresponding UCAC invoice—ie., Checks A, H, I, K and L, (ii) such five checks by themselves comprise 88.7% in dollar amount of all of the Preference Period checks paid (ie., $126,914.11/ $143,078.58), and (iii) a 16–day disparity in length of time to pay between pre-Preference Period checks and Preference Period checks—ie., 142 days as compared to 158 days— is significant and material.

(d) Because, as set forth in the preceding paragraph, the Preference Period transfers (ie., Checks A—L), on the one hand, and the pre-Preference Period transfers (ie., Checks M—DD), on the other hand, vary significantly and materially, it matters not, for any purpose, how cemented UCAC's pre-Preference Period relationship with the Debtors may have been. *See supra* pp. 22–23 (citing *Color Tile*, 239 B.R. at 875–877) (transferee cannot dispense with industry standard evidence and

succeed under § 547(c)(2)(C) if there are significant variations between pre-preference period and preference period transfers); *Molded Acoustical*, 18 F.3d at 227–228 (transferee not entitled to any, much less substantial, leeway from relevant industry norm if transferee cannot even demonstrate that preference period transfers conform in nature to pre-preference period transfers).

In light of the foregoing, UCAC, in order to satisfy § 547(c)(2)(C), may neither (a) dispense with the production of industry standard evidence, nor (b) depart substantially from what is determined to be the relevant industry norm.

■ Proceeding next to the issue of whether Checks A—L conform to an industry standard, the parties hotly contest such issue but, as the Court understands it, such dispute is limited, in particular, to whether the timeliness of the tender of such checks (ie., the length of time that passed between the dates of an UCAC invoice and the check cut in response to such invoice) conforms to whatever is the relevant industry standard. Having so narrowed the issue that must be resolved, the Court must next ascertain what constitutes the relevant industry norm against which the timeliness of the tender of Checks A—L must be compared. Of course, before one can ascertain what constitutes the relevant industry norm, one must determine what constitutes the relevant industry. The Court defines the relevant industry in the instant matter as firms that are comparable to UCAC which provide collection services to hospitals that are comparable to the Debtors. Such delineation of the relevant industry in the instant matter is consistent with the Third Circuit's decision in *Molded Acoustical, see Molded Acoustical*, 18 F.3d at 227 (court

looked "at the range of terms on which firms comparable to Fiber Lite [ (ie., the transferee) ] on some level provide credit to firms comparable to the debtor on some level"), and is not, as the Court understands it, disputed by either of the parties herein.

The Trustee maintains that the parties, prior to trial, essentially stipulated to the industry standard regarding the timeliness of the tender of checks by hospitals to collection firms that are comparable to UCAC (hereafter also referred to as "the days to pay" or "the number of days to pay"), and that such stipulated standard equals a period of no more than 121 days from the date of invoice to the date of payment. The Trustee argues as he does because (a) the parties stipulated, prior to trial, that the Trustee's expert witness would have testified that the relevant industry standard for the number of days to pay equals a range of 101 to 121 days from the date of invoice, *see* Stip. Re: Industry Standard ¶ 1, (b) the parties also stipulated, prior to trial, that UCAC's expert witness would have testified that the relevant industry standard for the average number of days to pay equals 121 days from the date of invoice, *see* Stip. Re: Industry Standard ¶ 2, (c) the relevant industry standard for the number of days to pay, argues the Trustee, is equivalent to the relevant industry standard for the average number of days to pay, and (d) the parties' expert witnesses, argues the Trustee, thus agreed that the relevant industry standard for the number of days to pay equals a period of no more than 121 days from the date of invoice. UCAC, on the other hand, argues that it did not essentially stipulate that the relevant industry standard for the number of days to pay equals a period of no more than 121

days from the date of invoice. UCAC argues as much because UCAC contends, in turn, that (a) it only stipulated as to what its expert witness would have offered as to the relevant industry standard for merely the average number of days to pay, (b) a relevant industry standard as to the average number of days to pay is not equivalent to what the relevant industry standard is for the actual number of days to pay, and (c) the Trustee's expert witness, even though the parties stipulated that he would have testified as to what the relevant industry standard is for the number of days to pay, nevertheless would only have testified, in actuality, as to what is the relevant industry standard for merely the average number of days to pay. In other words, UCAC argues that it stipulated with the Trustee as to an industry standard figure that is essentially impertinent to a resolution of UCAC's § 547(c)(2)(C) position. UCAC argues further that the relevant industry standard with respect to the actual number of days to pay equals a range of either 18 to 374 days or 56 to 263 days from the date of invoice. The first of the two ranges offered by UCAC as the relevant industry standard respecting actual number of days to pay—ie., 18 to 374 days—equals the range of the number of days that it took nine hospital clients of UCAC (hereafter "the 9 Hospital Clients") to pay UCAC after submittal of various invoices for various periods during 1997 and 1998. *See* Def's. Trial Ex. 1. The second of the two ranges offered by UCAC as the relevant industry standard respecting actual number of days to pay—ie., 56 to 263 days— equals the range of the average number of days that it took each of the 9 Hospital Clients to pay UCAC.[4] *See Id.*

**4.** UCAC's expert witness derived his 121–day industry standard for the average number of days from the date of invoice to the date of payment by averaging together the nine aver-

■ As an initial matter, the Court notes that it finds somewhat if not entirely disingenuous UCAC's argument that UCAC did not stipulate with the Trustee that the relevant industry standard in the instant matter equals a period of no more than 121 days from the date of invoice to the date of payment. The Court finds as it does because the Court (a) finds it to be inconceivable that the Trustee would have stipulated with UCAC regarding an industry standard figure if the Trustee were also aware at the time of such stipulation that UCAC took the position that such industry standard figure is essentially irrelevant to a resolution of UCAC's § 547(c)(2)(C) position, (b) does not recollect that UCAC, at any point during the trial in the instant matter, drew the fine distinction—at least effectively—that it now attempts to make subsequent to such trial between the industry standard figures to which the parties' experts concededly would have testified, and (c) suspects that the Trustee, had he been aware of such distinction which UCAC now attempts to make, would never have agreed that his expert would not testify and that such expert's report would not be put into evidence. The preceding view of the Court notwithstanding, however, the Court will proceed to assess UCAC's position that the relevant industry standard instead equals a range of either 18 to 374 days or 56 to 263 days from the date of invoice to the date of payment. Of course, a range of terms or, as in the instant matter, a range of time to pay periods can only constitute an industry standard if "the range of terms [or, as in the instant matter, a range of time to pay periods] prevail[s] as some relevant industry's norms." *Molded Acoustical*, 18 F.3d at 226. Therefore, not just any range of time to

pay periods will suffice to establish a relevant industry standard and UCAC, because it bears the burden of proof as to what constitutes the relevant industry standard, *see Id.* at 227 (Fiber Lite, the transferee in *Molded Acoustical*, bore burden of proof therein on what constituted relevant industry standard), thus must preponderantly prove that a range of either 18 to 374 days or 56 to 263 days from the date of invoice to the date of payment prevails as the norm for the industry that it engages in.

The Court, for the following reasons, concludes that UCAC has not preponderantly proven, as it now contends, that the relevant industry standard equals a range of either 18 to 374 days or 56 to 263 days from the date of invoice to the date of payment:

(a) UCAC concedes, by way of the testimony and affidavit of its lone witness at trial, Wanda Lewis, that it is not the only entity in the relevant industry in the instant matter; stated differently, UCAC so concedes that there are other entities like itself that provide collection services to hospitals that are comparable to the Debtors. Consequently, any industry norm regarding time to pay periods, be it with respect to either actual or average number of days to pay, must necessarily also take into account time to pay periods for those entities other than UCAC that reside in the same industry as does UCAC. Despite the preceding, UCAC has failed to produce any admissible payment data evidence at trial regarding other collection services entities like itself such as, for instance, admissible evidence as to the range of time to pay periods

age figures that are included within the second range that is offered by UCAC as an

industry standard for the actual number of days to pay. *See* Def's. Trial Ex. 1.

which certain of such other entities experienced with respect to their hospital clients—in the preceding regard, the Trustee objected to the admission into evidence of Defendant's Exhibit 2, which exhibit is a listing of time to pay periods for four hospital clients of Risk Management Alternatives, Inc., successor in interest to UCAC (hereafter "RMA's Hospital Clients"), which objection the Court sustained (i) because UCAC sought to authenticate such exhibit only by way of testimony of Wanda Lewis, who lacked the requisite personal knowledge to so authenticate, and (ii) for relevancy reasons as well given Ms. Lewis' lack of personal knowledge as to whether RMA's Hospital Clients were similar in nature to the Debtors. As well, the Court finds to be unreliable and, thus, unpersuasive any affidavit and testimonial evidence by Wanda Lewis as to what others in UCAC's industry experience relative to time to pay periods because no foundation—or at least one sufficient to the Court—has ever been established as to her, and thus the Court finds that she lacks, personal knowledge regarding other industry members' experiences. Because of such utter lack of comparative evidence, UCAC has not preponderantly demonstrated that either the actual or the average time to pay periods with respect to its own hospital clients which substantially exceed 121 days from the date of invoice fall within, or should serve to comprise the outer boundary of, an industry norm regarding time to pay periods that must take into account time to pay experiences for entities other than UCAC.

(b) UCAC's witness, Wanda Lewis, also admitted at trial that UCAC had more hospital clients other than the 9 Hospital Clients—ie., the nine which UCAC used to establish the ranges which UCAC now advances as the relevant industry standard. Furthermore, Ms. Lewis testified that the contractual terms for at least some of UCAC's hospital clients who were omitted from consideration when UCAC established the aforesaid ranges were such that the resulting time to pay periods for those hospital clients equalled 0 days. Because of such omissions by UCAC, UCAC has not preponderantly proven that either the actual or the average time to pay periods with respect to the 9 Hospital Clients which substantially exceed 121 days from the date of invoice fall within, or should serve to comprise the outer boundary of, the time to pay period norm with respect to all of UCAC's own hospital clients let alone an industry norm regarding time to pay periods that must take into account time to pay experiences for entities other than UCAC.

(c) Given the wide disparity between the 121–day industry average figure which UCAC stipulates to and the length of many of the time to pay periods in the two ranges that UCAC advances as alternative relevant industry standards, which ranges equal the ranges of actual and average time to pay periods for the 9 Hospital Clients, UCAC has not even preponderantly demonstrated that either the actual or the average time to pay periods with respect to the 9 Hospital Clients which substantially exceed 121 days from the date of invoice fall within, or should serve to comprise the outer boundary of, the time to pay period norm

with respect to just the 9 Hospital Clients let alone (i) a time to pay period norm for all of UCAC's own hospital clients, or (ii) an industry norm regarding time to pay periods that must take into account time to pay experiences for entities other than UCAC.

(d) The Court must discount if not disregard time to pay information for any of those of the 9 Hospital Clients that are moribund because only terms that are ordinary constitute an industry's norms, and "ordinary terms are those which prevail in healthy, not moribund, creditor-debtor relationships." *Molded Acoustical,* 18 F.3d at 227 (citing *In re Meredith[Meridith] Hoffman Partners,* 12 F.3d 1549, 1553 (10th Cir.1993)). Because of the wide disparity between the 121–day industry average figure which UCAC stipulates to and the length of many of the time to pay periods in the two ranges that UCAC advances as alternative relevant industry standards, the Court must question whether certain of the 9 Hospital Clients are moribund and, in particular, at least those of the 9 Hospital Clients for whom the average time to pay period exceeds 121 days. Since UCAC does nothing to dispel the Court's concern as just related, the Court must hold that UCAC has not preponderantly proven that time to pay periods exceeding 121 days from the date of invoice fall within, or should serve to comprise the outer boundary of, an industry norm regarding time to pay periods that can only take into account "healthy, not moribund, creditor-debtor relationships."

(e) Other than the evidence which has been dealt with thus far in the Court's analysis, UCAC has not provided the Court with any other evidence to support its assertion that the relevant industry standard equals a range of either 18 to 374 days or 56 to 263 days from the date of invoice to the date of payment. Relevant to the preceding finding by the Court, the Court notes that neither of the parties sought to, or did, introduce the reports of their expert witnesses; consequently, UCAC cannot resort to such reports, even to the extent that the same might shed light on the propriety of the two ranges advanced by UCAC as an industry standard. Having concluded that UCAC fails to preponderantly prove that the relevant industry standard equals a range of either 18 to 374 days or 56 to 263 days from the date of invoice to the date of payment, the Court also finds that, unless it uses the intersection of the parties' stipulated industry standard figures as the relevant industry standard, it will then be left without a relevant industry standard against which it can adjudge the normalcy of Checks A—L respecting, in particular, the timeliness of the tender of such checks. The intersection of the parties' stipulated industry standard figures—ie., the intersection of a range of 101 to 121 days from the date of invoice to the date of payment and an average number of days from the date of invoice to the date of payment equal to 121 days— yields an industry standard equal to a time to pay period of no more than 121 days from the date of invoice. The Court concludes, for several reasons, that it may, indeed must, use such 121–day figure as the relevant industry standard in the instant mat-

ter. First, just as the Court finds when ascertaining the "baseline of dealing" between the Debtors and UCAC pre-Preference Period vis-a-vis the timing of the tender of Checks M—DD, to wit that an average days to pay figure of 142 days more accurately captures the essence of the pre-Preference Period dealings between the Debtors and UCAC than does a range with wildly disparate boundaries as is suggested by UCAC, the Court now finds as well that an average days to pay figure of 121 days is much more indicative of what constitutes the true industry standard than are ranges with similarly wildly disparate boundaries as is suggested by UCAC. Second, and most importantly, the only days to pay figure that UCAC can preponderantly establish as the relevant industry standard is a time to pay period of no more than 121 days from the date of invoice. Because UCAC must preponderantly establish some figure as the relevant industry standard in order to avoid automatic defeat under § 547(c)(2)(C), *see supra* p. 88 (UCAC bears burden of proving what constitutes the relevant industry standard), and since the 121–day figure is the only one that can preponderantly be established, the same shall be accepted as the relevant industry standard in the instant matter for the length of a days to pay period.

█ Because the Court finds the relevant industry standard regarding the timeliness of the tender of checks to equal a time to pay period of no more than 121 days from the date of invoice, and since the History Table reveals that Checks A—L were all paid between 136 and 206 days after, or, stated differently, more than 121 days from, the date of invoice, none of Checks A—L technically conform to the relevant industry standard. Furthermore, and as the Court indicated above, UCAC, in order to satisfy § 547(c)(2)(C), may not depart substantially from what is determined to be the relevant industry norm. However, may UCAC depart less than substantially from the 121–day industry standard figure and still satisfy § 547(c)(2)(C) and, if so, by how much?

█ If the Court, when assessing the instant applicability of § 547(c)(2)(C), holds fast to one of its earlier findings that it made when it assessed the instant applicability of § 547(c)(2)(B), to wit that the "baseline of dealing" between the Debtors and UCAC pre-Preference Period regarding, in particular, the length of time to pay is a 74– to 98–day length of time to pay, *see supra* p. 81, then UCAC really is not entitled to any leeway from the 121–day industry standard figure because (a) a transferee is not entitled to any leeway from a relevant industry norm if such transferee cannot even demonstrate that preference period transfers conform in nature to, or are consistent with, pre-preference period transfers, *see Molded Acoustical*, 18 F.3d at 227–228, and (b) none of Checks A—L, which were paid anywhere from 136 to 206 days subsequent to invoice date, conform even to the parties' aforesaid "baseline of dealing" equal to a 74– to 98–day length of time to pay. However, because the parties have stipulated that each of Checks A—J satisfy § 547(c)(2)(B), and since the Court is clueless as to the reason for such stipulation given that (i) § 547(c)(2)(B) addresses whether preference period transfers are consistent with pre-preference period transfers, and (ii) such consistency seems to be lacking with respect to Checks A—J, and notwithstanding that the parties did not stipulate as to any particular fact relevant to a

§ 547(c)(2)(B) determination, the Court, for the purpose of resolving whether Checks A—L satisfy § 547(c)(2)(C), shall take the 142–day average length of time to pay for Checks M—DD as the "baseline of dealing" between the Debtors and UCAC pre-Preference Period regarding the length of time to pay.

As the History Table reveals, the timeliness of the tender of seven of Checks A—L—in particular, Checks B—G and J—substantially conform to the aforesaid 142–day baseline given that each of such seven checks was paid in less than, or within two days of, 142 days. Given such conformance of Checks B—G and J to the aforesaid 142–day baseline, and because the Court recognizes that the 121–day industry standard in the instant matter is at least somewhat debatable, and since the Court can also see its way fit to extend to UCAC a certain amount of leeway from such 121–day industry standard on the basis of what the Court finds is a relatively short but nevertheless somewhat cemented two-year pre-Preference Period relationship between the Debtors and UCAC, the Court holds that Checks B—G and J fall within the sliding scale or customized window surrounding the relevant industry standard in the instant matter so that such checks also satisfy § 547(c)(2)(C)—put differently, the Court shall grant to UCAC 23 days leeway from the aforesaid 121–day industry standard. However, the time to pay periods which accompany five of Checks A—L—in particular, Checks A, H, I, K and L—fail to substantially conform to the aforesaid 142–day baseline given that each of such five checks was paid anywhere from 158 to 206 days subsequent to the date of invoice, or at least 16 days later than 142 days. Because Checks A, H, I, K and L do not even conform to the aforesaid 142–day baseline, and since a transferee is not entitled to any leeway from a relevant industry norm if such

transferee cannot even demonstrate conformance of preference period transfers to pre-preference period transfers, the Court is not free to grant to UCAC any leeway from the instant 121–day industry standard with respect to Checks A, H, I, K and L. Because UCAC may not depart at all from, and also cannot satisfy, the instant 121–day industry standard with respect to Checks A, H, I, K and L, the Court holds that UCAC fails to satisfy § 547(c)(2)(C) with respect to such checks.

Moreover, and in any event, the Court concludes that Checks A, H, I, K and L fail to satisfy § 547(c)(2)(C) even if the Court accepts—which it does not—that (a) the "baseline of dealing" between the Debtors and UCAC pre-Preference Period regarding the length of time to pay is, as UCAC argues, a range of 74 to 243 days from the date of invoice, which baseline is satisfied by Checks A, H, I, K and L, and (b) the two-year pre-Preference Period relationship between the Debtors and UCAC is long and well-cemented rather than relatively short and only somewhat cemented. The Court is constrained to draw the latter conclusion because (a) "where the range of time transpiring between invoices and payments has always varied greatly between the parties," a baseline as such regarding the length of time that it takes to pay invoices, even if the same has both been established between such parties as part of a longstanding, cemented relationship and been conformed to when one considers preference period transfers, nevertheless departs unacceptably from an established industry norm, at least with respect to, and so that § 547(c)(2)(C) is not satisfied regarding, payments made within such baseline range but substantially later than such industry norm, *Molded Acoustical*, 18 F.3d at 226 (where there is a great variation in such range of time, "one cannot feel confident that 'late' payments during the

insolvency period were unmotivated by unusual creditor pressure or dictated by the debtor's financial woes (the baseline problem resurfaced)"), (b) great variation is exhibited among time to pay periods if such periods range from 74 to 243 days in length, as is the case in the instant matter with respect to Checks M—DD that were cut during the pre-Preference Period relationship between the Debtors and UCAC, and (c) Checks A, H, I, K and L all were paid substantially later than the instant 121–day industry norm—i.e., anywhere from 158 to 206 days as compared to 121 days, which disparity in time the Court finds to be substantial. Furthermore, because such latter conclusion is compelled by Third Circuit precedent in the form of its *Molded Acoustical* decision, *see Id.*, it matters not whether such latter conclusion is, as the Court will explain, perhaps inconsistent with the decision in *Color Tile*. As set forth in an earlier part of the instant opinion, this Court understands the *Color Tile* court to hold, at least arguably, that a transferee can prevail under § 547(c)(2)(C) without presenting any industry standard evidence as long as such transferee can demonstrate (a) the existence of a suffi-

ciently long pre-preference period relationship between itself and the debtor, and (b) consistency between preference period transfers and transfers that occurred as part of such lengthy, well-settled pre-preference period relationship. *See supra* p. 83. At first blush, it would seem that such holding in *Color Tile* cannot be squared with the conclusion of this Court as set forth in the instant paragraph. However, *Color Tile* is distinguishable from the instant matter because, whereas the range of the days to pay periods pre-preference period in *Color Tile* was only 15 to 72 days, such range in the instant matter is 74 to 243 days. Because a range of 15 to 72 days does not present a variation among the days to pay periods of the magnitude that is encountered by a range of, for instance, 74 to 243 days as in the instant matter, this Court hypothesizes that the *Color Tile* court saw no need to insist upon industry standard evidence before ruling;[5] as well, this Court presumes that the *Color Tile* court would have insisted upon such evidence before ruling if the ranges present therein had presented substantially greater variation.[6]

**5.** The reconciliation in the text that precedes the instant footnote notwithstanding, this Court questions whether the aforesaid holding in *Color Tile* can be reconciled with that part of the Third Circuit's binding decision in *Molded Acoustical* to the effect that, if "the parties' longstanding credit terms [ (ie., those established as part of a well-settled pre-preference period relationship between the parties) ], although consistent as between them [both prior to and during the preference period], ... depart so grossly from what has been established as the pertinent industry's norms that they cannot be seriously considered usual and equitable with respect to the other creditors," then "the creditor [will] be unable to fit its terms within the sliding-scale window surrounding the established industry's norm [and] the preferential transfer will not be deemed unavoidable by virtue of § 547(c)(2), although the terms of §§ 547(c)(2)(A) & (B) are fulfilled." *Molded Acoustical,* 18 F.3d at

226. The reason for this Court's aforesaid skepticism is that one cannot possibly discern whether parties' well-settled and longstanding pre-preference period credit terms—even those which are conformed to during the preference period—grossly depart from a pertinent industry's norms unless at least minimal industry standard evidence is produced at trial so as to allow for a sufficient comparison between such terms and such industry norm. For that reason, and because this Court must follow the Third Circuit's decision in *Molded Acoustical* in its entirety, this Court, if it needed to in the instant matter, would part ways with *Color Tile* and insist upon the presentation of industry standard evidence by UCAC in any event.

**6.** As an aside, this Court notes that, even though the *Color Tile* court appears to have expressed the view that industry standard evi-

Based upon the foregoing, the Court must conclude that (a) UCAC satisfies neither § 547(c)(2)(C) nor, consequently, § 547(c)(2) with respect to Checks A, H, I, K and L—as set forth in a preceding section of the instant opinion, Checks K and L also fail to satisfy § 547(c)(2)(B), (b) the Debtors' transfer of Checks A, H, I, K and L to UCAC consequently is preferential and avoidable as such pursuant to § 547(b), and (c) UCAC satisfies both § 547(c)(2)(C) and, given the stipulation as to § 547(c)(2)(A) and (B), § 547(c)(2) in its entirety with respect to Checks B—G and J.

### C. Final Conclusion as to the Trustee's § 547 Preference Claim.

For the reasons set forth above, the Trustee has, by the necessary preponderance of the evidence, made out a prima facie case for preferential avoidance under § 547(b) of the transfers to UCAC of Checks A—L, which checks total in amount $143,078.58. As the foregoing analysis reveals, UCAC has preponderantly established that, pursuant to § 547(c)(2), it may shield from avoidance as a preference the transfers of Checks B—G and J, which seven transfers total $16,164.47. However, and unfortunately for UCAC, the foregoing analysis also reveals that UCAC cannot so shield from preferential avoidance the transfers of Checks A, H, I, K and L; accordingly, such five transfers, which total $126,914.11, are avoidable as preferential under § 547(b) and recoverable by the Trustee from UCAC via § 550(a)(1).

### II. The Trustee's Claim Objection under § 502(d)—Count 2.

▋ The Trustee, in his Count 2, objects to, and consequently seeks to have disallowed, a scheduled claim of UCAC in the amount of $5,384 pursuant to § 502(d) on the ground that UCAC is the transferee of avoidable transfers, which transfers UCAC has thus far refused to return to the Trustee. 11 U.S.C. § 502(d) provides, in pertinent part, that:

> the court shall disallow any claim of any entity from which property is recoverable under section ... 550 ... of this title or that is a transferee of a transfer avoidable under section ... 547 ... of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section ... 550 ... of this title.

11 U.S.C.A. § 502(d) (West 1993).

▋ Because the Court rules herein that the transfers of Checks A, H, I, K and L to UCAC, which five transfers total $126,914.11, are avoidable as preferential under § 547(b) and recoverable by the Trustee from UCAC via § 550(a)(1), and since UCAC has not yet disgorged to the Trustee the $126,914.11 in transfers that are avoided by virtue of such ruling, § 502(d) applies so as to disallow UCAC's $5,384 scheduled claim. However, § 502(d) operates not as a forfeiture but rather as a temporary disability. See In re Allegheny International, Inc., 136 B.R. 396, 401 (Bankr.W.D.Pa.1991); In re Sierra–Cal, 210 B.R. 168, 173 (Bankr.E.D.Cal. 1997). "It is temporary in the sense that the disallowance ceases when the creditor disgorges the property in question." Sierra–Cal, 210 B.R. at 173. UCAC's failure thus far to disgorge the aforesaid $126,914.11 is understandable given that the Court only rules now as to such liability on UCAC's part. See Allegheny Inter-

---

dence did not need to be presented by the transferee therein in order to prevail, such transferee ultimately presented what consti-

tuted, at least to the satisfaction of such court, sufficient industry standard evidence. See Color Tile, 239 B.R. at 876–877.

*national,* 136 B.R. at 401. Therefore, the Court's disallowance of UCAC's $5,384 scheduled claim under § 502(d) is only conditional, which is to say that such claim is presently disallowed but the same shall become allowed if and when UCAC disgorges to the Trustee the $126,914.11 in transfers that are avoided by virtue of the instant opinion. With respect to the method of disgorgement by UCAC, the Court will presently say no more than that the same may not be accompanied by, or coupled with, a dollar-for-dollar setoff by UCAC of its $5,384 scheduled claim against the $126,914.11 amount that is to be disgorged given that UCAC, as an unsecured creditor with respect to the $5,384 claim, is only entitled to whatever pro rata distribution such claim will yield in the instant bankruptcy case, which pro rata distribution the Court presently understands will be less than 100 percent of $5,384.

### III. *UCAC's Reconsideration Motion.*

In UCAC's Reconsideration Motion, UCAC requests that the Court reconsider its November 13, 2002 Order, which order granted to the Trustee leave to amend his complaint (hereafter the "Leave Order"). The Trustee, upon obtaining such leave from the Court, amended his initial complaint so that, by virtue of such amended complaint, he now seeks to avoid as preferential two transfers from the Debtors to UCAC—in particular, Checks K and L, which two checks total $33,543.56—in addition to the ten transfers—ie., Checks A—J—which he originally sought to avoid as preferential. The parties appear to agree, and the Court finds, that the Trustee learned in January 2002 that Checks K and L were transferred to UCAC within the Preference Period, and that the Trustee did not move to obtain leave to amend his complaint to plead as preferential such transfers until November 7, 2002. UCAC

asks the Court to vacate its Leave Order because, argues UCAC, the Court should have denied the Trustee's motion which sought the leave that was ultimately granted by the Court (hereafter "the Trustee's Leave Motion"). UCAC argues that the Trustee's Leave Motion should have been denied because the Trustee's delay in seeking leave to amend was undue, motivated by bad faith, and prejudicial to UCAC. For the reasons set forth below, the Court disagrees with UCAC in the preceding regard.

As an initial matter, the Court notes that UCAC brings its Reconsideration Motion under Fed.R.Bankr.P. 9023, which rule makes Fed.R.Civ.P. 59 applicable to bankruptcy cases. The Court cannot grant to UCAC any relief from the Leave Order via Fed.R.Bankr.P. 9023 and Fed.R.Civ.P. 59 because (a) one can only obtain relief under Fed.R.Civ.P. 59 from judgments or orders that are final, *see Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1469 (4th Cir.1991); *Superior Bank, F.S.B. v. Tandem National Mortgage, Inc.,* 197 F.Supp.2d 298, 331 (D.Md.2000), and (b) the Leave Order is an interlocutory rather than a final order, *see In re Magno,* 216 B.R. 34, 38 (9th Cir. BAP 1997) ("the order granting leave to amend was an unappealable, interlocutory order"). The proper rule under which the Reconsideration Motion should have been brought is Fed.R.Civ.P. 54(b), which rule (a) is made applicable to the instant adversary proceeding pursuant to Fed.R.Bankr.P. 7054(a), and (b) allows for the reconsideration of interlocutory pretrial orders such as the Leave Order, *see Fayetteville Investors,* 936 F.2d at 1469–1470; *Superior Bank,* 197 F.Supp.2d at 331. Because UCAC's Reconsideration Motion must be brought pursuant to Fed.R.Civ.P. 54(b) and Fed. R.Bankr.P. 7054(a), such motion seeks as

well merely the entry by this Court of yet another interlocutory order.

■ The Court also notes that it neither allowed oral argument regarding the Trustee's Leave Motion nor will provide the opportunity for a hearing with respect to UCAC's Reconsideration Motion. Such action by the Court is warranted because the Court (a) may, if it deems it appropriate, dispense with hearings regarding certain pretrial motions, that is motions that seek the entry of interlocutory orders, such as, in particular, the Trustee's Leave Motion and UCAC's Reconsideration Motion, (b) deems it appropriate to dispense with a hearing regarding the Reconsideration Motion given that, for reasons discussed below, the Court sees as frivolous, if not utterly groundless, any opposition to the Trustee's Leave Motion, thereby making unnecessary a hearing regarding the Reconsideration Motion, and (c) deemed it appropriate, and for the very reasons that the Court dispenses with a hearing regarding the Reconsideration Motion, to dispense with a hearing regarding the Trustee's Leave Motion. As for the Court's authority to dispense with hearings regarding certain pretrial motions, the Court determines that such authority exists with respect to, in particular, the Trustee's Leave Motion and UCAC's Reconsideration Motion because (a) Fed.R.Civ.P. 7, which is made applicable to adversary proceedings via Fed.R.Bankr.P. 7007, "governs motion practice in the federal courts," *F.D.I.C. v. Deglau*, 207 F.3d 153, 162 (3rd Cir.2000), and, thus, in this Court as well with respect to the instant adversary proceeding, (b) Fed.R.Civ.P. 7 does not dictate that hearings be held with respect to pretrial motions such as the Trustee's Leave Motion or UCAC's Reconsideration Motion, *see also Id.* ("The broad strokes of Rule 7 are fleshed out substantially by [l]ocal [r]ule[s]"), (c) no other federal procedural rule dictates that hearings be held with respect to motions such as, in particular, either the Trustee's Leave Motion or UCAC's Reconsideration Motion, and (d) Local Bankruptcy Rule 7008.1(f), which applies to the instant adversary proceeding to the extent that it is not inconsistent with Fed.R.Civ.P. 7, permits a bankruptcy court in the Western District of Pennsylvania to dispense, if appropriate, with a hearing regarding a motion in an adversary proceeding, *see* W.D.Pa. Fed.R.Bankr.P. 7008.1(F) (West 2001) (the court can dispense with oral argument or a hearing if neither is requested in writing and, furthermore, even "[u]pon written request for an argument or hearing date . . ., the clerk shall [merely] forward the written request to the court for *appropriate action;* " use of the phrase "appropriate action" implies that the Court can either grant or deny such written request for a hearing in its discretion); *accord* W.D.Pa. Fed.R.Civ.P. 7.1(E) (West 2001) ("The court shall resolve non-dispositive motions in an expedited fashion . . . with *or without oral argument*"); *Deglau,* 207 F.3d at 162 (noting that E.D.Pa. Fed.R.Civ.P. 7.1(f) provides that " '[t]he court may dispose of a motion without oral argument' ").

■ The Court proceeds next to the merits of UCAC's Reconsideration Motion, that is an assessment of whether the Court should have denied the Trustee's Leave Motion on the basis that the Trustee's delay in seeking leave to amend was undue, motivated by bad faith, and prejudicial to UCAC. Leave to amend a complaint under Fed.R.Civ.P. 15(a), which rule is made applicable to adversary proceedings by Fed.R.Bankr.P. 7015, should be freely granted unless, and as the instant parties appear to agree, "a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party." *Adams v. Gould Inc.*, 739 F.2d

858, 864 & 867–868 (3rd Cir.1984); *see also Alvin v. Suzuki,* 227 F.3d 107, 121 (3rd Cir.2000) (same); *Cureton v. National Collegiate Athletic Association,* 252 F.3d 267, 273 (3rd Cir.2001) (same). "The question of undue delay, as well as the question of bad faith, requires that we focus on the plaintiffs' motives for not amending their complaint to assert this claim earlier; the issue of prejudice requires that we focus on the effect on the defendants." *Adams,* 739 F.2d at 868.

■ The Court understands the essence of UCAC's primary argument in support of its position to be that (a) UCAC, by the close of the Court's hearing on October 21, 2002, regarding UCAC's summary judgment motion, had earned, or had become entitled to, the entry of a summary judgment in its favor with respect to the entirety of the Trustee's complaint as such complaint existed on that date, (b) the Trustee's complaint as of October 21, 2002, obviously did not include a claim for avoidance of Checks K and L as preferential since such claim was the subject of the Trustee's amendment in November 2002, (c) the Court, rather than denying UCAC's summary judgment motion at the close of the October 21, 2002 hearing, took such motion under advisement, which means that UCAC, in November 2002 when the Trustee sought and obtained leave to amend, still had the prospect of obtaining a summary judgment in its favor that would have essentially mooted the Trustee's request for leave to amend, (d) the Court, in fact, intimated at the October 21, 2002 summary judgment hearing that UCAC was entitled to a summary judgment in its favor with respect to Checks A—J, which, at the time, were the only checks that the Trustee sought to avoid as preferential via his complaint as it then existed, (e) the Trustee's delay in seeking leave to amend became, consistent

with Third Circuit caselaw, undue after the Court conducted the October 21, 2002 summary judgment hearing, (f) UCAC suffered prejudice because the Trustee was allowed to amend his complaint after the October 21, 2002 summary judgment hearing since, by doing so, the Trustee's action at least survived with respect to Checks K & L whereas, absent such amendment, UCAC presumably would have received the summary judgment which UCAC had earned or had become entitled to, and (g) the Trustee, by waiting until after the October 21, 2002 summary judgment hearing to seek leave to amend, acted out of bad faith, supposedly because by so waiting to amend he thereby executed a malicious intent to short circuit the entry of the summary judgment which UCAC had earned or had become entitled to.

The Court must reject such argument by UCAC as just recounted if for no other reason than that many of the predicates upon which such argument rests are fallacious. First, the Court, contrary to what UCAC appears to think, did not intimate at the October 21, 2002 summary judgment hearing that UCAC was then entitled to the entry of a summary judgment in its favor with respect to Checks A—J. Had the Court so intimated, then the Court would have had no reason to rule, as it did, that UCAC could not prevail on its defense under § 547(c)(2)(C) with respect to even Checks A—J unless it presented sufficient industry standard evidence with respect to such checks. Second, by virtue of ruling at the close of the October 21, 2002 hearing that UCAC could not prevail under § 547(c)(2)(C) or, consequently, under § 547(c)(2) with respect to any of Checks A—L unless it presented sufficient industry standard evidence with respect to each such check, the Court then denied UCAC's summary judgment motion in its entirety; with respect to the immediately preceding con-

clusion, the Court notes that it does not even find to be credible and, thus, finds to be disingenuous an asserted belief by UCAC that the Court took UCAC's summary judgment motion under advisement after October 21, 2002. Third, and perhaps most importantly, UCAC neither earned nor was entitled to the entry of a summary judgment in its favor at the close of the hearing on October 21, 2002, even with respect to Checks A—J which, at the time, were the only ones for which the Trustee formally sought avoidance pursuant to § 547(b). The Court holds as it does on the last point, and notwithstanding that the Trustee failed to respond to UCAC's summary judgment motion with any affidavit or other countering evidence of his own, because (a) a nonmoving party need only respond to a summary judgment motion with sufficient countering evidence if the moving party has made and supported its summary judgment motion in accordance with Fed. R.Civ.P. 56, which rule is made applicable to the instant adversary proceeding pursuant to Fed.R.Bankr.P. 7056, see Fed. R.Civ.P. 56(e), 28 U.S.C.A. (West 1992), (b) the Court, for the reasons set forth in the next sentence herein, concludes that UCAC failed to so make and support its summary judgment motion, and (c) the Trustee consequently did not need to come forth with any countering evidence to defeat UCAC's summary judgment motion. The Court concludes that UCAC failed to make and support its summary judgment motion in accordance with Fed. R.Civ.P. 56 because (a) the Court, for the very reasons that it now expresses in detail elsewhere in the instant opinion, rejected on October 21, 2002, UCAC's argument that it could prevail under § 547(c)(2)(C) without presenting sufficient industry standard evidence, (b) the only evidence that UCAC presented with its summary judgment motion to support its contention then that such motion should be granted with respect to, in particular, the issue of whether Checks A—J conformed to the relevant industry standard—ie., to support UCAC's contention then that such issue was not genuinely disputed and that UCAC was entitled to judgment in its favor on such issue—was statements contained in paragraphs 13 and 14 in the affidavit of Wanda Lewis regarding the conformance of Checks A—J to payment practices of other UCAC hospital clients and hospital clients of entities similar to UCAC, (c) affidavits in support of a summary judgment motion can only be made on personal knowledge, and such affidavits "shall show affirmatively that the affiant is competent to testify to the matters stated therein", see Fed.R.Civ.P. 56(e), 28 U.S.C.A., (d) Wanda Lewis' affidavit failed to lay a foundation sufficient to show that she possesses personal knowledge and is, thus, competent to testify as to what other entities similar to UCAC experience relative to time to pay periods with respect to their hospital clients, which means that such affidavit testimony must be disregarded by the Court when passing upon UCAC's summary judgment motion, see Leidig v. Honeywell, Inc., 850 F.Supp. 796, 799 n. 1 (D.Minn.1994) ("self-serving and conclusory statements [in an affidavit], for which no evidentiary support is offered[,]" need not be accepted as true), and (e) UCAC failed to persuade the Court, much as it still fails to persuade the Court, that Checks A—J conform to whatever is the relevant industry standard simply because they conform to payment practices of other UCAC hospital clients. Fourth, and moreover, even if it could grant summary judgment, a court has the discretion to decline to do so if such court feels that it would be more appropriate "to obtain the fuller factual foundation afforded by a plenary trial." 10A Charles A. Wright, et

al., *Federal Practice & Procedure* § 2728 (3rd ed.2002). It thus matters not even whether UCAC was technically entitled to the entry of a summary judgment in its favor with respect to Checks A—J; instead, what is relevant is that the Court denied UCAC's summary judgment motion.

■ Because, as just set forth, three of the four predicates upon which rests UCAC's aforesaid hallmark argument fail—ie., parts (a), (c), and (d) of such argument—one would expect the remainder of such argument to fail as well. Such is the case. In particular, UCAC's argument that the Trustee's delay in seeking leave to amend became undue as a result of the Court's convening of the October 21, 2002 summary judgment hearing fails precisely because the Court then denied UCAC's motion for summary judgment. Indeed, Third Circuit precedent holds that it generally does not constitute undue delay for a plaintiff to wait until the summary judgment stage of a case to seek to amend its complaint, *see Adams,* 739 F.2d at 869, unless such plaintiff "delays making a motion to amend until after summary judgment *has been granted to the adverse party,"* *Cureton,* 252 F.3d at 273 (emphasis added). As for UCAC's argument that the Trustee's amendment prejudiced UCAC because it essentially cost UCAC the entry of the summary judgment that it had earned or had become entitled to, such argument fails because (a) UCAC, as explained above, neither earned nor became entitled to such summary judgment in its favor, and (b) the Trustee's amendment thus did not cost UCAC the entry of such summary judgment. Finally, because the Court denied UCAC's summary judgment motion at the end of the October 21, 2002 hearing, and since the Trustee, given that he was present at such hearing, presumably understood the course of action that

the Court had taken, the Court cannot find that the Trustee, by waiting until after such hearing to seek leave to amend, thereby (a) executed a malicious intent to short circuit the eventual granting of a summary judgment motion which it knew had already been denied, or (b) consequently acted out of bad faith.

■ As for the remainder of UCAC's position that the Trustee's delay in seeking leave to amend was undue, motivated by bad faith, and prejudicial to UCAC, the Court draws the following conclusions:

(a) UCAC argues that the Trustee's delay of nearly ten months in seeking leave to amend—ie., from January 2002 until November 7, 2002—is essentially undue on its face. The Court rejects such argument and finds that such delay is not undue on its face because (i) UCAC was aware of Checks K and L and the fact that they both fell within the Preference Period during the entirety of such ten-month period, (ii) the Trustee made clear to the Court at the October 21, 2002 summary judgment hearing that he contends that Checks K and L constitute preferential transfers, and (iii) the Trustee's Leave Motion was filed and the Trustee's amendment of his complaint was accomplished before the Court ever held a trial on, much less entered a final judgment with respect to, the Trustee's preference complaint vis-a-vis any of Checks A—L. Once again, that the Trustee waited until after the close of the October 21, 2002 summary judgment hearing to seek leave to amend does not make his delay in seeking the same undue given that, and as already explained above, the Court denied UCAC's summary judgment motion in its entirety at the conclu-

sion of the October 21, 2002 hearing. The Court does not identify any other discernible basis that UCAC raises for its "undue delay" position.

(b) Other than the "bad faith" argument raised by UCAC which is tied to UCAC's belief that it had earned or had become entitled to the entry of a summary judgment in its favor, which argument the Court has already rejected, the Court does not identify any other discernible basis that UCAC raises for its "bad faith" position.

(c) The Trustee's amendment of his complaint to simply add a claim that two additional payments are preferential did not result in any prejudice to UCAC in the form of additional discovery, cost, or preparation to defend, particularly given that, as set forth above, UCAC was aware of Checks K and L and the fact that they both fell within the Preference Period during the entirety of the period from January 2002 until November 7, 2002. Furthermore, that the Trustee's amendment operated to delay the trial in the instant matter from December 11, 2002, until February 26, 2003, did not serve to prejudice UCAC, which conclusion is particularly warranted given that (i) UCAC itself moved, on February 21, 2003, for a continuance of the trial set for February 26, 2003, and (ii) UCAC's reason for such continuance had nothing to do with the Trustee's amendment of his complaint so that the same pleads as preferential the transfer of Checks K and L. The Court does not identify any other discernible basis that UCAC raises for its "prejudice" position.

In light of the foregoing, the Court concludes that (a) the Trustee's delay in seeking leave to amend was not undue, was unmotivated by bad faith, and did not serve to prejudice UCAC in any respect, (b) its decision to grant the Trustee's Leave Motion was warranted, and (c) UCAC's opposition to the Trustee's Leave Motion and, thus, the substance of UCAC's Reconsideration Motion as well, is frivolous, if not utterly groundless. Because the Court so concludes, the Court shall deny with prejudice UCAC's Reconsideration Motion.

## *CONCLUSION*

For the reasons set forth in detail above, the Court rules that (a) the Trustee has, by the necessary preponderance of the evidence, made out a prima facie case for preferential avoidance under § 547(b) of the transfer of Checks A—L to UCAC, which twelve transfers total $143,078.58, (b) seven of the twelve transfers in question—ie., Checks B—G and J—may be shielded from preferential avoidance pursuant to § 547(c)(2), which seven transfers total $16,164.47, and (c) five of the twelve transfers in question—ie., Checks A, H, I, K and L—are avoidable as preferential and recoverable by the Trustee from UCAC via § 550(a)(1), which five transfers total $126,914.11. Based on the preceding ruling, the Court also holds that UCAC's $5,384 scheduled claim is conditionally disallowed pursuant to § 502(d) unless and until UCAC disgorges to the Trustee the $126,914.11 in transfers that are avoided as set forth in the preceding sentence herein. Finally, the Court denies with prejudice UCAC's Reconsideration Motion.

An appropriate order will be entered.

## *ORDER OF COURT*

**AND NOW,** this **17th day** of **April, 2003,** upon consideration of (a) the amended complaint of the above-captioned plaintiff (hereafter "the Trustee"), wherein the

Trustee seeks, via (i) Count 1 thereof, to avoid as preferential under 11 U.S.C. § 547(b) twelve transfers that the Debtors made to United Creditors Alliance Corp. (hereafter "UCAC"), after which the Trustee seeks to recover such alleged preferential transfers pursuant to 11 U.S.C. § 550(a)(1), and (ii) Count 2 thereof, to have disallowed a scheduled claim of UCAC in the amount of $5,384 pursuant to 11 U.S.C. § 502(d) on the ground that UCAC, as is alleged in the Trustee's Count 1, is the transferee of avoidable transfers, which transfers UCAC has thus far refused to return to the Trustee, (b) UCAC's defense to the Trustee's preference action and, in particular, UCAC's assertion that each of the twelve alleged preferential transfers are subject to the "ordinary course of business" preference exception contained in 11 U.S.C. § 547(c)(2), (c) what the Court characterizes as a motion for reconsideration of the Court's November 13, 2002 Order granting the Trustee leave to amend his complaint (hereafter "UCAC's Reconsideration Motion"), and (d) the other submissions by the parties relevant to the instant matter, including the various briefs and documentary material submitted by the parties in support of their respective positions; and subsequent to notice and a trial on the matter held on February 26, 2003; and for the reasons set forth in the accompanying Memorandum Opinion dated April 17, 2003, it is **hereby ORDERED, ADJUDGED, AND DE-CREED** that:

(a) the Trustee has, by the necessary preponderance of the evidence, made out a prima facie case for preferential avoidance under § 547(b) of the transfer of Checks A—L to UCAC, which twelve transfers total $143,078.58,

(b) seven of the twelve transfers in question—ie., Checks B—G and J—may be shielded from preferential avoidance pursuant to § 547(c)(2), which seven transfers total $16,164.47,

(c) five of the twelve transfers in question—ie., Checks A, H, I, K and L—are avoidable as preferential and recoverable by the Trustee from UCAC via § 550(a)(1), which five transfers total $126,914.11,

(d) UCAC's $5,384 scheduled claim is conditionally disallowed pursuant to § 502(d) unless and until UCAC disgorges to the Trustee the $126,914.11 in transfers that are avoided as set forth in the preceding paragraph herein, and

(e) UCAC's Reconsideration Motion is denied with prejudice.